UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO: 18-83 |
| WAYNE CELESTINE | SECTION: "H"(1) |

## ORDER AND REASONS

Before the Court is Defendant's Motion to Suppress (Doc. 46). For the following reasons, the Motion is DENIED.

## BACKGROUND

On April 30, 2018, Defendant Wayne Celestine was arrested on one count of conspiracy to distribute controlled substances in connection with his practice as a medical doctor at a licensed pain management clinic. Prior to his arrest, the government executed a search warrant on four separate properties belonging to Dr. Celestine and seized approximately 1,000 patient files, cash, vehicles, and other personal items. Defendant now seeks to suppress the items

seized, arguing that the affidavit supporting the search warrants contained false statements about the nature of his business. The Government opposes this Motion.

## LAW AND ANALYSIS

Defendant seeks the suppression of all materials seized in the searches of his clinic at 525 Commerce Street, his home at 91 English Turn Drive, his rental property at 36 Seven Oaks Drive, and his motorhome. He alleges that the search warrant affidavit made recklessly false accusations, namely (1) that Defendant's clinic was a "cash only" business that did not accept payments from insurance or by check, (2) that Defendant supplied narcotics to "every" patient, and (3) that Defendant did not perform physical examinations of the confidential sources.

Pursuant to the exclusionary rule, a court must suppress evidence that was seized on the basis of a warrant that was not supported by probable cause.[1] In order to determine whether the exclusionary rule applies, the court must consider a two-step test.[2] First, the court asks whether the good-faith exception to the rule applies.[3] "Evidence obtained by officers in objectively reasonable good-faith reliance upon a search warrant is admissible, even though the affidavit on which the warrant was based was insufficient to establish probable cause."[4] "The good faith inquiry is confined to the objectively ascertainable

---

[1] United States v. Pope, 467 F.3d 912, 916 (5th Cir. 2006) (citing Mapp v. Ohio, 367 U.S. 643 (1961)).
[2] United States v. Mays, 466 F.3d 335, 342–43 (5th Cir. 2006).
[3] *Id.* at 343.
[4] United States v. Satterwhite, 980 F.2d 317, 320 (5th Cir. 1992) (citing United Stated v. Leon, 468 U.S. 897, 922–23).

question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization."[5] The court will uphold an officer's good-faith reliance on a warrant unless one of four conditions apply:

>(1) the issuing-judge "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;"
>(2) the issuing-judge "wholly abandoned his judicial role" in such a manner that "no reasonably well trained officer should rely on the warrant;"
>(3) the underlying affidavit is "bare bones" ("so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"); or
>(4) the warrant is "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid."[6]

If good faith is not found, the Court next asks whether the warrant was supported by probable cause.[7] "If the good faith exception applies, no further analysis is conducted."[8]

Here, Defendant argues that the good faith exception should not apply because (1) the false statements in the affidavit supporting the search warrant application misled the judge issuing the warrant, (2) the warrant lacked any indicia of probable cause to seize all of his patient files, and (3) the warrant lacked any indicia of probable cause to search his home, rental property, or motorhome. This Court will address each argument in turn.

---

[5] *Pope*, 467 F.3d at 916.
[6] United States v. Gibbs, 421 F.3d 352, 358 (5th Cir. 2005) (quoting *Leon*, 468 U.S. at 923).
[7] *Id.* at 357.
[8] United States v. Calmes, 608 F. App'x. 307, 308 (5th Cir. 2015).

## A. Misleading Statements in Search Warrant Application

In order to show that the magistrate judge was misled by the affidavit supporting the search warrant application, Defendant must show that the affiant "either deliberately or recklessly misled the magistrate and that without the falsehood there would not be sufficient matter in the affidavit to support the issuance of the warrant."[9]

Defendant has identified certain statements in the affidavit supporting the search warrant that he alleges are false. First, he argues that the affidavit falsely and repeatedly claims that his clinic was an "all cash" business that only accepted payment by cash, cashier check, or money order and did not accept "any known form of insurance." In addition, the affidavit analyzes several of Defendant's bank accounts and states that, "there were no medical insurance payments that were deposited into the [110036678] account."[10] Defendant, however, submits images of several deposited checks from insurance companies into this account during the requisite time period. Defendant also shows numerous personal checks from patients that were also deposited into his accounts. He alleges that this evidence shows the affidavit to be false and misleading. Although the statement that Defendant never accepted insurance payments is not accurate, the Government points out that Defendant and his staff told confidential sources who were being treated as patients that Defendant did not accept insurance and accepted payment by cash, cashier's check, and money order only. The Government also contends that a cash payment was required to see the doctor even if insurance was later

---

[9] United States v. Davis, 226 F.3d 346, 351 (5th Cir. 2000).
[10] Doc. 46-2, ¶100.

collected on a patient's behalf. The evidence submitted by Defendant does not undercut these points.

Next, Defendant argues that the affidavit contains the statement that he dispensed controlled substances to "every established patient" and that this statement is false and misleading. Without presenting any evidence, Defendant argues that in addition to opioid pain management, he also treated opioid addiction and provided other pain treatments such as epidurals, trigger point injections, nerve blocks and laser therapy. He argues that the government inappropriately extrapolated his treatment of every patient from the experiences of three confidential informants and the analysis of an internist from Mississippi. The government contends that this statement is supported by its review of the Louisiana Prescription Monitoring Program data.

Finally, Defendant contests the affidavit's statements regarding his physical examination of the confidential informants. The affidavit states that Defendant did not perform a physical examination of the confidential source referred to as CS-2 at his initial visit. Defendant submits a video recording and transcript of CS-2's initial visit with Defendant that, although inconclusive, calls the affidavit's assertion into question. The affidavit correctly notes that Defendant asked CS2 to lift his arm to the front and then straight up. It is unclear from the video and transcript, however, whether Defendant actually touched CS-2 during the examination. Next, Defendant complains that the affidavit stated that no vitals were taken from the confidential source referred to as CS-3 at his initial visit. Defendant presents evidence showing that in fact his blood pressure was taken.

5

To the extent that the statements identified by Defendant are inaccurate, most are exaggerations of the truth. While the Government, and this Court, lament that the affidavit was written in terms of absolutes, the removal of the statements identified by Defendant does not prevent a finding of probable cause.[11] "Probable cause . . . is not a high bar: It requires only the kind of fair probability on which reasonable and prudent [people,] not legal technicians, act."[12] The 96-page affidavit includes sufficient information to support a finding of probable cause, including: 18 undercover patient visits that revealed the prescription of controlled dangerous substances without medical reason or without a meaningful physical examination, as well as cash payments for office visits between $325.00 and $250.00; structuring activities and the deposit of more than $414,000.00 in cash into ten accounts over 11 months; surveillance of Celestine's clinic that revealed unusually long lines and wait times; an analysis of the Louisiana and Mississippi prescription monitoring programs that revealed that patients were traveling to Celestine's clinic from Alabama, Georgia, Mississippi, and Texas; the identification by Louisiana Blue Cross Blue Shield of 65 patients who used insurance to fill a prescription for controlled substances written by Celestine but did not use insurance for the office visit to see Celestine; the clinic's willingness to allow a third-party to pick up a patient's prescription by paying an office visit fee; and audio recordings of Celestine's interactions with undercover patients. Notwithstanding the overstatements in the affidavit relating to the operation

---

[11] *See* United States v. Richardson, 478 F. App'x 82, 88–89 (5th Cir. 2012 ("[E]ven if the warrant affidavit was amended to correct [the] misstatements and omissions, the affidavit still establishes probable cause to search.").

[12] Kaley v. United States, 571 U.S. 320, 338 (2014).

of Defendant's practice, the remaining information was more than sufficient to establish probable cause.

## B. Probable Cause to Seize Files and Search Non-Clinic Locations

Defendant next argues that the search warrant lacked any indicia of probable cause to seize all of his patient files or search his home, rental property, or motor home. The Supreme Court has held that a magistrate judge's determination of probable cause should be afforded great deference.[13] "When a warrant is supported by more than a 'bare bones' affidavit, officers may rely in good faith on the warrant's validity. 'Bare bones' affidavits contain wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause."[14]

The Fifth Circuit "has often found good-faith reliance on a warrant to search a defendant's home where the affiant alleged (1) the defendant's involvement in drug trafficking and (2) that—based on the affiant's law enforcement experience—such criminals keep drug paraphernalia at their homes."[15] Here, the affidavit contains 96 pages of facts suggesting that there was probable cause to believe Defendant was running a "pill mill operation." In addition, the affiant stated that surveillance saw Defendant traveling from the clinic to these locations. The affiant also noted that, in her experience, it is common for persons involved in drug crimes to keep evidence at their residences. Defendant has not cited to any case that found similar facts to be

---

[13] *Leon*, 468 U.S. at 914.
[14] *Satterwhite*, 980 F.2d at 321 (internal quotations omitted).
[15] United States v. Fields, 380 F. App'x 400, 403 (5th Cir. 2010).

insufficient indicia of probable cause. Accordingly, this Court finds that there was sufficient indicia of probable cause to seize all of Defendant's patient files and search his home, rental property, and motor home.

Defendant has not identified a reason for this Court to find that the officers were not in good faith in their reliance on the search warrant at issue. Accordingly, the good-faith exception to the exclusionary rule applies, and Defendant's request for the suppression of the evidence collected pursuant to the search warrant at issue is denied.

### C. *Franks* Hearing

In the alternative, Defendant requests a *Franks* hearing on the truthfulness of the warrant affidavit. A *Franks* hearing permits a defendant to challenge the veracity of statements in a search warrant affidavit.[16] In order to be entitled to a *Franks* hearing, Defendant is "required to make a 'substantial preliminary showing' that: (1) the affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in the warrant affidavit and (2) the remaining portion of the affidavit is insufficient to support a finding of probable cause."[17] For the reasons discussed above, Defendant is not entitled to a *Franks* hearing.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion is DENIED.

---

[16] United States v. Franks, 434 U.S. 154 (1978).
[17] United States v. Arispe, 328 F. App'x 905, 906 (5th Cir. 2009) (quoting *Franks*, 434 U.S. 154).

New Orleans, Louisiana this 22nd day of August, 2018.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**