UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO: 18-83** |
| **WAYNE CELESTINE** | **SECTION: "H"** |

## ORDER AND REASONS

Before the Court is Defendant Wayne Celestine's Motion for Compassionate Release (Doc. 125). For the following reasons, the Motion is DENIED.

## BACKGROUND

Defendant Wayne Celestine has served more than two years of his 84-month sentence for conspiracy to dispense outside the scope of professional practice and conspiracy to commit money laundering. He is currently housed at Federal Correctional Institute in Oakdale, Louisiana ("Oakdale") and is scheduled to be released on April 17, 2024. Defendant moves this Court for compassionate release in light of the COVID-19 virus outbreak at Oakdale. Defendant asks this Court to temporarily release him to home confinement for the duration of the virus outbreak at the facility.

On earlier consideration of this Motion, this Court held that it had no authority to consider Defendant's requests until he exhausted the

1

requirements of 18 U.S.C. § 3852(c).[1] Since that time, Defendant has properly requested compassionate release from the warden of his facility and 30 days have lapsed since the warden's receipt thereof. Accordingly, Defendant's request is now properly before this Court.

## LAW AND ANALYSIS

As of July 7, 2020, the Bureau of Prisons ("BOP") reports that, at Oakdale, 1 inmate is currently positive for COVID-19, 206 have recovered, and 7 have died.[2] Defendant alleges that if he contracts COVID-19, he is at high risk for complications because of his advanced age and pre-existing health conditions. Specifically, Defendant is 59 years old and suffers from hypertension, high cholesterol, and sleep apnea. He argues, therefore, that extraordinary and compelling reasons exist to modify his sentence.

"The district court's jurisdiction to correct or modify a defendant's sentence is limited to those specific circumstances enumerated by Congress in 18 U.S.C. § 3582."[3] Section 3582(c), as amended by the First Step Act, states in relevant part that:

> The court may not modify a term of imprisonment once it has been imposed except that-- (1) in any case-- (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set

---

[1] Doc. 133.
[2] Federal Bureau of Prisons, *COVID-19 Coronavirus*, available at https://www.bop.gov/coronavirus/ (last visited July 7, 2020).
[3] United States v. Garcia, 606 F.3d 209, 212 (5th Cir. 2010).

> forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>  (i) extraordinary and compelling reasons warrant such a reduction; or
>  (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

While Defendant requests only temporary release for the duration of the pandemic, courts have held that 18 U.S.C. § 3582(c)(1)(A) "does not grant the Court the authority to release [a defendant] temporarily until the COVID-19 pandemic abates."[4] By its clear terms, Section 3582 authorizes a court only to "reduce the term of imprisonment," with or without imposing a term of probation or supervised release. Accordingly, this Court must consider whether the relief available under Section 3582 is warranted.

The Sentencing Commission's policy statement regarding compassionate release sets forth what facts are considered "extraordinary and compelling." "Although historically sentence reductions could be ordered only upon a motion by the Director of the Bureau of Prisons, the First Step Act of 2018 amended the statute to additionally allow prisoners to petition the Court."[5] The Sentencing Commission's policy statements have not, however, been amended

---

[4] United States v. Pawlowski, No. CR 17-390-1, 2020 WL 2526523, at *4 (E.D. Pa. May 18, 2020).

[5] United States v. Perdigao, No. CR 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020).

since the enactment of the First Step Act, "and consequently, a portion of the policy statement now squarely contradicts 18 U.S.C. § 3582(c)(1)(A) as amended."[6] In recognizing this discrepancy,

> [m]any courts have concluded that this discrepancy means that the Sentencing Commission does not have a policy position applicable to motions for compassionate release filed by defendants pursuant to the First Step Act. Accordingly, other district courts have found that they have discretion to determine what constitutes an "extraordinary and compelling reason[ ]" on a case by case basis, and reliance on the policy statement may be helpful, but not dispositive.[7]

The policy statement states that, provided a defendant is not a danger to the community, extraordinary and compelling reasons exist under the following circumstances:

(A) Medical Condition of the Defendant.—

    (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

---

[6] *Id.*
[7] *Id.*

(B) Age of the Defendant.--The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.--As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).[8]

This Court finds that Celestine has not identified extraordinary and compelling reasons to order his immediate release from Oakdale.[9] On June 25, 2020, the Centers for Disease Control ("CDC") provided new guidance on what conditions put a person at a greater risk for severe illness from COVID-19.[10] The CDC has indicated that older adults and persons with chronic kidney disease, chronic obstructive pulmonary disease, obesity, serious heart conditions (such as heart failure, coronary artery disease, or cardiomyopathies), sickle cell disease, or Type 2 diabetes *are* at an increased risk for serious illness.[11] It has also indicated that people with hypertension

---

[8] U.S.S.G. 1B1.13.

[9] *See* United States v. Zukerman, No. 16 CR. 194 (AT), 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020) (and cases cited therein); United States v. Burrill, No. 17-CR-00491-RS-1, 2020 WL 1846788, at *3 (N.D. Cal. Apr. 10, 2020) (and cases cited therein).

[10] Centers for Disease Control, *People who are at an Increased Risk for Severe Illness*, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited June 26, 2020).

[11] *Id.*

*might* be at an increased risk.[12] Celestine is 59 years old and suffers from hypertension, high cholesterol, and sleep apnea. Defendant's medical concerns do not, therefore, fit squarely within any of the conditions identified by the CDC as high risk. While his hypertension might put him at an increased risk, his medical records reveal that the condition is controlled; he is being dispensed three different medications for the management of his hypertension.[13] While Celestine's more recent blood pressure readings have been high, his medical records indicate that his medication dosage was increased in response.[14] Accordingly, he has not identified any medical condition that puts him at a greater risk for severe consequences from contracting COVID-19. This Court therefore cannot say that he is unable "to provide self-care within the environment of a correctional facility" to avoid contracting COVID-19.[15]

Further, the Government represents that the conditions at Oakdale have improved since this Court first considered Celestine's motion. The BOP has removed the inmates from community dorms and placed two inmates per cell to improve social distancing. The most compelling evidence of the BOP's success in containing the spread is that Celestine has repeatedly tested negative for COVID-19. Celestine's medical records indicate that after contact with a person who tested positive for COVID-19, he was tested on April 29, quarantined, retested on May 28 and June 10, and released from quarantine on June 12, 2020.[16] Given this, Celestine cannot show that the BOP is not capable of adequately addressing the spread of disease at Oakdale. Therefore,

---

[12] *Id.*
[13] Doc. 139-1.
[14] *Id.*
[15] *See* U.S.S.G. 1B1.13.
[16] *Id.*

no compelling or extraordinary reason exists to grant Celestine's immediate release.

## **CONCLUSION**

**IT IS ORDERED** that Defendant's Motion for Compassionate Release is **DENIED**.

New Orleans, Louisiana, on this 7th day of July, 2020.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**